IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DONALD RAY RICHARDSON,        §
TDCJ-CID NO. 1254647,         §
   Petitioner,        §
                       §
v.                            §
                       §   CIVIL ACTION NO. H-08-1612
NATHANIEL QUARTERMAN, Director, §
Texas Department of Criminal  §
Justice, Correctional         §
Institutions Division,        §
   Respondent.        §

## MEMORANDUM OPINION AND ORDER

Donald Ray Richardson, proceeding pro se, filed a Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) challenging his state court conviction.  Pending before the court is Respondent's Motion for Summary Judgment with Brief in Support (Docket Entry No. 20) to which Richardson has not responded.  For the reasons stated below, the court will grant Quarterman's motion for summary judgment and deny Richardson's petition for a writ of habeas corpus.

## I.  Background[1]

On January 30, 2004, Houston Police Department ("HPD") Officer McNaul was on duty at his extra job as an apartment complex

---

[1]The facts and procedural history of this case are drawn largely from the memorandum opinion of the First Court of Appeals affirming Richardson's conviction.  See Richardson v. State, No. 01-04-00833-CR, 2006 WL 488661 (Tex. App. -- Houston [1st Dist.] March 2, 2006, pet. ref'd) (mem. op., not designated for publication).  For any facts or procedural history not stated in the Court of Appeals' opinion a citation to the record is noted.

security guard.  Jason Orzo approached McNaul and informed him that petitioner Donald Ray Richardson had just attempted to run over him with a blue Ford F-150 pickup truck.  Orzo got into McNaul's vehicle and directed McNaul to Richardson's residence.  During the drive Orzo told McNaul that Richardson was operating a methamphetamine lab in his residence.  He further informed McNaul that Richardson's truck was filled with supplies and equipment for making methamphetamine.

When McNaul and Orzo arrived at Richardson's residence McNaul saw a blue Ford F-150 matching the description given by Orzo.  The bed of the truck was filled with items that were concealed by a tarp.  Richardson came out of the residence and approached McNaul. McNaul questioned Richardson about Orzo's accusations, but Richardson denied that he assaulted Orzo and that he had a methamphetamine lab in his residence.  Richardson, however, refused to grant permission to McNaul to search his residence or truck.

At McNaul's request, an HPD narcotics team was dispatched to investigate.  The narcotics team arrived with a trained narcotics dog, which made positive alerts for narcotics at the front and back entrances of Richardson's residence and at the driver's side door of Richardson's truck.  McNaul then left the scene to obtain a search warrant based on Orzo's statements and the drug dog's positive alerts.  HPD Sergeant Lopez remained at the scene with Richardson.

While McNaul was gone Richardson verbally gave Lopez permission to search his truck. Lopez searched the truck and found glassware and chemicals that are commonly employed in the manufacture of methamphetamine.

Shortly thereafter, McNaul returned with a search warrant, and the police officers began to search the residence. McNaul testified that in the residence he saw chemicals and equipment that he knew were commonly used to make methamphetamine. He therefore contacted Officer Dimambro, an HPD officer who was a member of a special methamphetamine task force. Officer Dimambro came to the scene and examined the chemicals and equipment found in the residence and seized several items and substances for analysis by the Texas Department of Public Safety ("TDPS") crime lab.

A criminologist at the TDPS crime lab analyzed the substances seized by Officer Dimambro. Based on this analysis she concluded that the total weight of substances containing methamphetamine was approximately 1,232.61 grams.

On July 28, 2004, a jury convicted Richardson of possession with intent to deliver methamphetamine weighing at least 400 grams by aggregate weight, including adulterants and diluents, in violation of Texas Health and Safety Code § 481.112(f).[2] The trial court sentenced Richardson to forty-five years in prison.[3]

---

[2]See Ex parte Richardson, No. WR-68,880-01, at 89 (Tex. Crim. App. Nov. 19, 2007).

[3]Id.

The First Court of Appeals affirmed the trial court's judgment on March 2, 2006. Richardson then filed a petition for discretionary review with the Texas Court of Criminal Appeals, but the petition was refused on July 26, 2006.[4]

Richardson collaterally attacked his sentence by filing a petition for a writ of habeas corpus in state court on November 19, 2007.[5] As part of the state habeas proceeding, Richardson's trial counsel filed an affidavit responding to Richardson's allegations of ineffective assistance of counsel.[6] The trial court made findings of fact in accordance with the affidavit and recommended that Richardson's petition be denied.[7] Based on the findings made by the trial court, the Texas Court of Criminal Appeals denied the petition on January 9, 2008, without written order.[8] Richardson filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 29, 2008, raising essentially the same claims that he asserted in his state habeas petition.

---

[4]Richardson v. State, No. 652-06 (Tex. Crim. App. July 26, 2006) (per curiam).

[5]See Ex parte Richardson, No. WR-68,880-01, at cover.

[6]See id. at 67-74 (Affidavit of Sam A. Maida).

[7]See id. at 77-80.

[8]Id. at cover.

-4-

## II.  **Richardson's Claims**

The court understands Richardson's petition to assert the following grounds for relief:[9]

1.  Richardson was denied his Fourteenth Amendment rights to equal protection and due process when the state refused to provide free copies of or access to the transcript of his state trial proceedings for the preparation of an application for a writ of habeas corpus;[10]

2.  Richardson was arrested without probable cause, and evidence used against him at trial was obtained pursuant to an unconstitutional search and seizure because the relevant search warrant was not supported by probable cause, he did not give oral permission for a search of his vehicle, and even if he did give oral permission for a search, he was not properly read his Miranda rights before giving such permission;[11] and

3.  Richardson was denied his right to effective assistance of counsel because his trial counsel:

    a.  failed to request a Franks[12] hearing to challenge the truthfulness of statements in the search warrant affidavit even though Richardson asked him to do so;

    b.  failed to preserve errors for direct appeal in connection with the motion to suppress evidence seized from Richardson's home and vehicle;

_____

[9]The court must liberally construe the petitions of pro se prisoner litigants.  See Haines v. Kerner, 92 S. Ct. 594, 595-96 (1972) (per curiam).

[10]Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) at 7.

[11]Id. at 18-28.

[12]Franks v. Delaware, 98 S. Ct. 2674 (1978).

c.   failed to argue in support of the motion to suppress that Richardson never gave oral permission to search his truck and that Officer Lopez was making false statements when he asserted that Richardson gave oral permission;

d.   failed to argue in support of motion to suppress that even if Richardson gave oral permission to search his truck, he had not been given the Miranda[13] warnings before giving such permission;

e.   failed to investigate why a waiver or consent form was never signed by Richardson to document Richardson's giving permission to the officers to search his truck;

f.   failed, in arguing for the motion to suppress, to challenge the drug dog evidence that supported the search warrant by pointing out (1) that the particular drug dog had positively alerted to narcotics in the past, (2) that the police did not explain what a certification number means or that the dog had the ability to alert to narcotics, (3) that drug dogs have a fallibility rate of 7-38%, and (4) that the police did not show what the dog's accuracy rate was or that the dog's training and certification were up to date;

g.   failed to interview the prosecution's witnesses or witnesses suggested by Richardson;

h.   failed to investigate the offense or prepare an adequate defense;

i.   failed to adequately explain the elements of the offense to Richardson so that he could make an informed decision as to whether to accept a plea bargain that was offered by the prosecution;

---

[13]Miranda v. Arizona, 86 S. Ct. 1602 (1966).

j.   failed to notify the prosecution that Richardson would be willing to plead guilty to a lesser included offense;

k.   failed to notify Richardson of who was on the prosecution's witness list so that Richardson could assist in preparing a defense and impeaching the witnesses;

l.   failed to object to hearsay testimony of police officers regarding statements or omissions made by Richardson during a custodial interrogation before he received <u>Miranda</u> warnings;

m.   failed to subpoena Jason Orzo in order to impeach his statements made in support of the search warrant;

n.   failed to notify the court that Richardson was on medication, which Richardson alleges prevented him from assisting in his defense or comprehending what was happening;

o.   failed to request a lesser included offense instruction in the jury charge that would have allowed the jury to find Richardson guilty of possession of a smaller amount of methamphetamine;

p.   failed to file a motion in limine regarding statements allegedly made by Richardson to police before he received <u>Miranda</u> warnings;

q.   met with Richardson for no more than five minutes each court date prior to trial to discuss the case, which prevented Richardson from participating in his defense and prevented trial counsel from adequately preparing to cross-examine the lab technician who testified for the prosecution as to the amount of methamphetamine present in the substances seized;

r.   failed to hire a chemist to independently verify the content of the substances seized;

s.   did not have command of the relevant law or the facts;

     t.    failed to inform Richardson of the law with regard to whether the weight of certain adulterants and diluents could be added to the weight of the controlled substances found in Richardson's possession;

     u.    refused to move to withdraw as Richardson's counsel, which Richardson asserts he should have done because he had an inadequate understanding of chemistry and the process of making methamphetamine; and

     v.    failed to object to Officer McNaul's testimony regarding Richardson's "SPN number."[14]

### III.  Standards of Review

**A.  Summary Judgment**

A court grants summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). Material facts are facts that may "affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

---

[14]Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) at 8-17.  A SPN number, or "system person number," is "a unique, eight-digit number used to identify a person connected to a Harris County criminal case."  Harris County -- Justice Information Management Systems -- FAQ – What is a SPN, http://home.jims.hctx.net/faq.aspx (last visited Nov. 11, 2008).  Officer McNaul testified in this case that a SPN number is assigned to a person when he or she is arrested in Harris County.  3 R.R. at 41.

The party moving for summary judgment bears the initial burden of proving the absence of any genuine issues of material fact. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). Once the movant has met this burden, the non-movant must establish that there is a genuine issue for trial. Smith v. Brenoettsy, 158 F.3d 908, 911 (5th Cir. 1998). If the non-movant is unable to meet this burden, the motion for summary judgment will be granted. Fed. R. Civ. P. 56(c).

When considering a summary judgment motion the court generally resolves any doubts and draws any inferences as to disputed facts in favor of the nonmoving party. Hunt v. Cromartie, 119 S. Ct. 1545, 1551-52 (1999). In a habeas corpus proceeding, however, 28 U.S.C. § 2254(e)(1) mandates that findings of fact made by a state court are "presumed to be correct." 28 U.S.C. § 2254(e)(1). This statute overrides the ordinary summary judgment rule. Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002), overruled on other grounds by Tennard v. Dretke, 124 S. Ct. 2562 (2004). Therefore, the court will accept any findings of fact made by the state court as correct unless the habeas petitioner can rebut the presumption of correctness by clear and convincing evidence. Id.

**B. Habeas Corpus**

The provisions of 28 U.S.C. § 2254(d) set forth "a highly deferential standard for evaluating state-court rulings." Lindh v. Murphy, 117 S. Ct. 2059, 2066 n.7 (1997). A court cannot grant a

-9-

writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court proceeding

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Courts review pure questions of law and mixed questions of law and fact under subsection (d)(1) and questions of fact under subsection (d)(2). <u>Martin v. Cain</u>, 246 F.3d 471, 475 (5th Cir. 2001).

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 120 S. Ct. 1495, 1523 (2000). A decision is an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> "Determination of a factual issue made by a State court shall be presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-10-

### IV.  Analysis

**A.   Denial of Access to Trial Transcript**

Richardson first asserts that he has been denied his right to equal protection and due process because he has been denied access to copies of the transcript of his trial proceedings.[15]  He alleges that he cannot adequately prepare a habeas petition because he is unable to access the transcript.[16]  Moreover, he alleges that he is unable to obtain copies of the transcript because he is indigent, whereas people with greater financial resources would be able to pay for copies.[17]  The Texas Court of Criminal Appeals denied essentially the same claim on the merits in Richardson's state habeas proceeding.[18]

To the extent that this claim can be construed to allege that Richardson has been denied access to his trial transcript in violation of state law, this court cannot grant relief on such a claim.  See 28 U.S.C. § 2254(a); Engle v. Issac, 102 S. Ct. 1558, 1567 (1982) ("Insofar as respondents simply challenge . . . [the

---

[15]Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) at 7.

[16]Id.

[17]Id.

[18]See Ex parte Richardson, No. WR-68,880-01, at 7 (reciting essentially the same claim); id. at cover (denying the claim on the findings of the trial court); id. at 77 (finding, by the trial court, that "[a]pplicant failed to show that he was improperly denied access to the trial transcript").

application of state] law, they allege no deprivation of federal rights and may not obtain habeas relief.").

To the extent that this claim can be construed to allege that Richardson has been denied a trial court transcript in violation of federal law, he has not demonstrated that he is entitled to relief. The Constitution does not require the state to provide a habeas petitioner a free copy of his trial transcript for the purpose of searching for possible errors "merely because he is indigent." Bonner v. Henderson, 517 F.2d 135, 135 (5th Cir. 1975); Deem v. Devasto, 140 F. App'x 574, 575 (5th Cir. 2005) ("[T]here is no constitutional mandate that a habeas petitioner must be provided a free copy of his state habeas trial record."). See also United States v. Herrera, 474 F.2d 1049 (5th Cir. 1973) ("This Court has consistently held that a federal prisoner is not entitled to obtain copies of court records at the government's expense to search for possible defects merely because he is an indigent."). An indigent petitioner is only entitled to a free copy if he can establish that it is necessary for a fair adjudication of at least one of his claims. See Smith v. Beto, 472 F.2d 164, 165 (5th Cir. 1972) ("[T]he petitioner has not shown that the district court erred in holding that he had not demonstrated a need for the trial transcript in proving a denial of effective counsel."). Richardson has not specified -- much less proved -- which, if any, of his claims he is unable to properly litigate because he has been deprived of a free transcript.

Moreover, if the habeas petitioner's attorney was provided a copy of his trial transcript for his direct appeal, "'there is no requirement that the defendant be provided with physical custody of a copy of his transcript.'" Smith, 472 F.2d at 165 (quoting United States v. Fay, 230 F. Supp. 942, 948 (S.D.N.Y. 1964)); see also Ballard v. Collins, No. 93-1151, 1994 WL 121936, at *1 (5th Cir. March 23, 1994) ("Because Ballard had access to the trial record in his direct appeal, there is no constitutional requirement that he obtain physical custody of the record in this federal habeas-corpus action.") (citing Smith, 472 F.2d at 165). Richardson's appellate attorney apparently had a copy of the trial transcript for Richardson's direct appeal because he cited to it throughout Richardson's appellate brief to the First Court of Appeals.[19] See Ballard, No. 93-1151, 1994 WL 121936 at *1 (concluding that the petitioner's appellate attorney had access to the trial transcript on direct appeal because the appellate brief "contains references to the trial record").

Therefore, Richardson has not shown that the Texas Court of Criminal Appeals' denial of relief on this claim was "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), or that it "was based on an unreasonable determination of the facts in light of the evidence

---

[19]See Brief for Appellant, Richardson v. State, No. 01-04-00833-CR, 2006 WL 488661 (Tex. App. -- Houston [1st Dist.] March 2, 2006).

presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).
Accordingly, the court cannot grant relief on this claim.

**B.   Illegal Arrest and Illegal Search and Seizure**

Richardson next asserts that his arrest was not supported by
probable cause and that the evidence seized from his home and
truck, which was eventually presented at his trial, was obtained
pursuant to an unconstitutional search.[20]   With regard to the
seizure of the evidence, Richardson specifically contends that the
search was unlawful because the search warrant was not supported by
probable cause, that he did not verbally consent to the search of
his truck, and that even if he did consent to the search of his
truck, he had not been given <u>Miranda</u> warnings before giving
permission.[21]

To the extent that Richardson seeks relief because his arrest
was illegal, the court cannot grant relief on that ground alone.
<u>See</u> <u>Johnson v. Beto</u>, 466 F.2d 528, 529 (5th Cir. 1972) ("Even if,
arguendo, appellant's arrest was illegal, since no evidence or
statement was taken from him, he has no grounds for relief.").
"The legality of the arrest is pertinent only in connection with a
claim that the petitioner was denied a fair trial by the
introduction of evidence which was a product of the illegal

---

[20]See Petition for a Writ of Habeas Corpus by a Person in
State Custody (Docket Entry No. 1) at 18-28.

[21]<u>See</u> <u>id.</u>

arrest."   16 Federal Procedure, Lawyers Edition, <u>Habeas Corpus</u> § 41:189 (2007).  The court, however, may only grant relief on the ground that illegally seized evidence was introduced at trial if Richardson was denied "an opportunity for full and fair litigation of [his] Fourth Amendment claim" in state court.  <u>Stone v. Powell</u>, 96 S. Ct. 3037, 3046 (1976).

Richardson fails to allege that he was denied the opportunity to fully and fairly litigate his claim in state court.  <u>See</u> <u>Moreno v. Dretke</u>, 450 F.3d 158, 167 (5th Cir. 2006) ("'[I]n the absence of allegations that the process provided by [the] state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on the merits,' <u>Stone</u> forecloses review.") (quoting <u>Williams v. Brown</u>, 609 F.2d 216, 220 (5th Cir. 1980)).  Moreover, the record reflects that Richardson not only had the opportunity to fully and fairly litigate his Fourth Amendment claim, but that he in fact did fully and fairly litigate his Fourth Amendment claim.

Richardson moved to suppress the evidence obtained from the search of his vehicle and residence.[22]  After a hearing on the motion outside the presence of the jury, the trial court denied Richardson's motion and allowed the evidence to be admitted.[23]  In

---

[22]<u>See</u> C.R. at 7-16 (written motion, ruling deferred by court until trial).

[23]<u>See</u> 3 R.R. at 9-28.

the direct appeal of his conviction Richardson asserted that the trial court erred by denying his motion to suppress because there was no probable cause to support the search warrant.[24]  The First Court of Appeals analyzed Richardson's claim, but concluded that the warrant was supported by probable cause and, therefore, that the trial court did not err by overruling Richardson's motion to suppress.[25]  Because Richardson has failed to demonstrate that he did not have an opportunity to fully and fairly litigate his Fourth Amendment claim, the court may not grant relief on this ground.

## C.   Ineffective Assistance of Counsel

Richardson alleges that his trial counsel, Sam Maida, provided constitutionally inadequate representation.[26]  Richardson presents a lengthy list of specific, alleged errors made by Maida.[27]

A defendant asserting ineffective assistance of counsel must prove that (1) counsel's performance was deficient, and

---

[24]Brief for Appellant at 13, Richardson v. State, No. 01-04-00833-CR, 2006 WL 488661 (Tex. App. -- Houston [1st Dist.] March 2, 2006).

[25]Richardson v. State, No. 01-04-00833-CR, 2006 WL 488661, *5.  The court need not evaluate whether the First Court of Appeals correctly applied pertinent Fourth Amendment jurisprudence because even if the Court of Appeals' analysis was erroneous, this court is still barred from granting relief.  See Moreno v. Dretke, 450 F.3d 158, 167 (5th Cir. 2006) ("[E]rrors in adjudicating Fourth Amendment claims are not an exception to Stone's bar.") (citing Janecka v. Cockrell, 301 F.3d 316, 321 (5th Cir. 2002)).

[26]Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) at 8-17.

[27]See id.

(2) counsel's deficient performance prejudiced the defense. <u>Strickland v. Washington</u>, 104 S. Ct. 2052, 2064 (1984).  The first prong of the test requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>  Counsel's representation must have been objectively unreasonable.  <u>Id.</u> Reasonableness is measured against prevailing professional norms and must be viewed under the totality of the circumstances.  <u>Id.</u> at 2065.  The court's review of counsel's performance is extremely deferential; the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." <u>Id.</u>  Under the second prong the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Wilkerson v. Collins</u>, 950 F.2d 1054, 1064 (5th Cir. 1992).

The petitioner has the burden of proof on an ineffective assistance of counsel claim.  <u>Alexander v. McCotter</u>, 775 F.2d 595, 601 (5th Cir. 1985).  If the petitioner makes an insufficient showing on one prong of the test, the court need not address the other.  <u>Strickland</u>, 104 S. Ct. at 2069.

Richardson asserted identical ineffective assistance of counsel claims in his state habeas petition.[28]  When considering

---

[28]<u>See</u> <u>Ex parte Richardson</u>, No. WR-68,880-01, at 7, Attachment A (reciting identical claims).

-17-

Richardson's state habeas petition, the trial court ordered Maida to submit an affidavit responding to Richardson's allegations.[29] The trial court found that the facts asserted in Madia's affidavit were true.[30] The Texas Court of Criminal Appeals adopted these findings.[31]

Pursuant to 28 U.S.C. § 2254(e)(1), the state court's factual determinations are "presumed to be correct," and can only be rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Richardson has not presented evidence to rebut any of the state habeas court's factual findings. Further, after reviewing the record, the court concludes that none of the state court's factual findings were unreasonable in light of the evidence presented in the state habeas proceeding. See 28 U.S.C. § 2254(d)(2). Therefore, the court accepts as true all of the state habeas court's factual findings and can only grant relief to Richardson if the state habeas proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

---

[29]See id. at 54-58 (ordering Maida to respond to Richardson's specific ineffective assistance of counsel allegations).

[30]Id. at 77 ("The Court further finds that the facts asserted in the affidavit of SAM A. MAIDA filed in this cause are true . . . .").

[31]See id. at cover (denying Richardson's petition "on findings of the trial court").

1.    <u>Claims Foreclosed by Contrary Factual Findings of State Habeas Court</u>

Because this court must accept as true all factual findings made by the state habeas court, several of Richardson's ineffective assistance claims are immediately foreclosed by the state court's contrary factual findings.[32]  First, Richardson asserts that Maida failed to adequately explain the elements of the offense to Richardson so that he could make an informed decision as to whether to accept a plea bargain offered by the prosecution.  But, the state habeas court concluded that "[t]rial counsel sufficiently discussed and explained the statutory elements of the offense with [Richardson], who . . . demonstrated an understanding of the offense."[33]

Richardson alleges that Maida failed to notify the prosecution that Richardson would plead guilty to a lesser included offense. The state habeas court found, however, that Richardson told Maida that he would only agree to plead guilty if the conviction would result in a sentence of four years or less and that Maida communicated this to the prosecution, but that the prosecution's best offer was for forty years.[34]

---

[32]The ineffective assistance of counsel claims foreclosed by the state habeas court's factual findings include items 3.i, j, k, n, r, t, and v, as listed in Part II, <u>supra</u>.

[33]<u>Ex parte Richardson</u>, No. WR-68,880-01, at 77.

[34]<u>Id.</u> at 79.

-19-

Richardson claims that Maida never notified him of who was on the prosecution's witness list.  Based on Maida's affidavit, however, the state habeas court found that Maida provided Richardson with a copy of the list and "discussed the anticipated testimony of each of the State's witnesses with [Richardson]."[35]

Richardson contends that Maida failed to notify the trial court that Richardson was on medication that allegedly prevented Richardson from assisting in his defense and comprehending his situation.  But, the state habeas court found that Richardson never told Maida that he was taking medication that could affect his mental capabilities and that Richardson never exhibited any signs of mental impairment.[36]  Therefore, Maida had no way of knowing that Richardson was taking such medication.

Richardson alleges that Maida failed to hire a chemist to independently verify the contents of the substances seized.  The state habeas court, however, found that Maida consulted with Dr. Proctor, an independent chemist, and concluded that his testimony would not be helpful to Richardson.[37]

Richardson asserts that Maida failed to inform him of the law with regard to how the weight of the controlled substance would be determined.  In response to this allegation, Maida averred that he

---

[35]Id. at 78.

[36]Id.

[37]Id.

and Richardson "discussed in great detail, and he was well aware of the weight of the illegal substance."[38]   The state habeas court found this statement to be true,[39] and further found that Maida "sufficiently discussed and explained the statutory elements of the offense with [Richardson], who was very knowledgeable of the law and demonstrated an understanding of the offense."[40]

Finally, Richardson claims that Maida failed to object to Officer McNaul's testimony regarding Richardson's SPN number.  The state habeas court found, to the contrary, that Maida did object to the introduction of evidence regarding Richardson's SPN number.[41] The record supports this finding.[42]   The court therefore cannot grant relief based on any of these grounds.

2.   <u>Claims Related to Motion to Suppress</u>

Seven of Maida's alleged mistakes relate to the failed motion to suppress.[43]   Maida filed a pretrial written motion to suppress in the state trial court challenging the admissibility of evidence

---

[38]<u>Id.</u> at 72.

[39]<u>See</u> <u>id.</u> at 77 ("The Court further finds that the facts asserted in the affidavit of SAM A. MAIDA filed in this cause are true . . . .").

[40]<u>Id.</u>

[41]<u>Id.</u> at 79.

[42]<u>See</u> 3 R.R. at 31, 41-42.

[43]The ineffective assistance of counsel claims related to the motion to suppress include items 3.a, b, c, d, e, f, and m as listed in Part II, <u>supra</u>.

seized from Richardson's residence.[44]  Maida argued that Orzo was
an insufficiently reliable informant to support a finding of
probable cause and that the evidence seized from Richardson's
residence was inadmissible because Richardson was detained for over
three hours without being read his <u>Miranda</u> rights before the search
warrant was executed.[45]  The trial court deferred ruling on the
motion until trial.[46]  During the hearing on the motion to suppress
Maida stated that his motion to suppress covered evidence seized
from both the residence and the vehicle.[47]  Maida cross-examined
Officer McNaul regarding the events leading up to the search of
Richardson's home and vehicle and as to how McNaul obtained the
search warrant.[48]  Maida asked questions suggesting that he sought
to establish that the contents of the truck were covered with a
tarp, that Officer McNaul never saw exactly which residence
Richardson came out of, that Richardson refused, at least
initially, to give consent to search the truck and residence, that
Richardson was detained in a police car for several hours before
and during the search, and that Orzo was not a credible informant.[49]
He made no substantive argument other than to state that he did not

---

[44]<u>See</u> C.R. at 7-16.

[45]<u>See</u> <u>id.</u>

[46]<u>Id.</u> at 9.

[47]<u>See</u> 3 R.R. at 21.

[48]<u>See</u> <u>id.</u> at 12-21, 25-27.

[49]<u>See</u> <u>id.</u>

think that the warrant was supported by probable cause.[50]  After the attorneys had completed their questioning of Officer McNaul, the trial court overruled the motion to suppress and allowed the evidence seized from the vehicle and residence to be admitted.[51]  Richardson now questions Maida's tactics and suggests that Maida should have taken several additional actions in litigating the motion to suppress.

In Richardson's state habeas proceeding Maida explained via affidavit why he chose not to employ the methods now suggested by Richardson.  Maida stated that he did not request a Franks[52] hearing to challenge the truthfulness of statements made in the search warrant affidavit because the hearing "would have only been a swearing match between [Richardson] and the three police officers."[53]

---

[50]See id. at 25.

[51]Id. at 27-28.

[52]In Franks the Supreme Court held that a defendant is entitled to a hearing to set aside certain material in a search warrant affidavit if "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause . . . ." Franks, 438 S. Ct. at 2676.  If the hearing results in a finding that certain allegations in the warrant affidavit are false, the court should set those allegations aside and evaluate whether the remaining allegations in the affidavit are sufficient to support probable cause. Id.  If the remaining allegations are insufficient to support probable cause, the evidence seized pursuant to the warrant should be "excluded to the same extent as if probable cause was lacking on the face of the affidavit." Id.

[53]Ex parte Richardson, No. WR-68,880-01, at 68.

With regard to his alleged failure to preserve certain arguments for direct appeal in connection with the motion to suppress,[54] Maida explained that he intentionally refrained from objecting to the lack of evidence regarding the reliability of the drug dog alerts.[55] He stated that he felt such an objection would "not have been warranted" since the dog alerted to the vehicle and contraband was found therein.[56] Maida did not address his failure to preserve other arguments for appeal, but the state habeas court concluded that Maida "sufficiently preserved errors in the suppression hearing . . . ."[57]

Maida stated that he did not argue that Richardson never gave oral permission to search the truck because the only evidence he could have presented in support of that claim would have been the testimony of Richardson.[58] Because Richardson had made "inconsistent statements" to Maida regarding the truck, Maida stated that he was "not comfortable with [Richardson] testifying in a suppression hearing."[59]

---

[54]In Richardson's direct appeal the First Court of Appeals held that Richardson had failed to preserve his "arguments concerning the untimely execution of the search warrant and the reliability of the canine unit . . . ." Richardson v. State, No. 01-04-00833-CR, 2006 WL 488661, *3.

[55]Ex parte Richardson, No. WR-68,880-01, at 68, 72.

[56]Id. at 68.

[57]Id. at 77.

[58]Id. at 70.

[59]Id.

Responding to Richardson's claim that Maida should have argued that any oral permission that Richardson may have given to search the truck was invalid since Richardson was not given <u>Miranda</u> warnings, Maida explained that he cannot remember what his thoughts were as to this issue.[60]  But he stated that he may have believed that the issue was not relevant or that it "was not a legitimate issue in light of [Richardson's] inconsistent statements about his knowledge of the contents of the truck."[61]

In response to Richardson's criticism that Maida should have investigated why a waiver or consent form was never signed to document that Richardson gave permission to search the truck, Maida points out that during the hearing on the motion to suppress he did ask Officer McNaul about Richardson's willingness to sign a consent form.[62]  McNaul testified that Richardson refused to sign the form.[63]

_____

[60]<u>Id.</u> at 69.

[61]<u>Id.</u>  Indeed, the fact that Richardson was not given <u>Miranda</u> warnings before giving consent to search does not mean the search was illegal.  <u>See</u> <u>Rayford v. State</u>, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003) ("[W]e know of no authority that requires informing a suspect of his rights under <u>Miranda</u> before obtaining a consent to search . . . ."); <u>Jones v. State</u>, 7 S.W.3d 172, 175 (Tex. App. -- Houston [1st Dist.] 1999, pet. ref'd) (holding that asking a defendant for consent to search did constitute custodial interrogation, and therefore, did not trigger <u>Miranda</u>).  <u>See</u> <u>also</u> <u>U.S. v. Stevens</u>, 487 F.3d 232, 242 (5th Cir. 2007) (holding that the district court did not err by admitting evidence seized in a search "pursuant to [the defendant's] "un-<u>Mirandized</u> statement of consent"); <u>United States v. D'Allerman</u>, 712 F.2d 100, 104 (5th Cir. 1983) ("It is . . . clear that <u>Miranda</u> warnings are not required to validate a consent search.").

[62]<u>Id.</u> at 70.

[63]3 R.R. 17, 20-21.

McNaul, however, then testified that he learned that Richardson gave oral permission to search the vehicle to another officer while McNaul had left to obtain the warrant.[64]  Officer Lopez also later testified that Richardson gave him oral permission to search the truck.[65]  The only way Maida could have contested this testimony was to have Richardson testify; but as previously explained, Maida did not feel comfortable putting Richardson on the stand.

Maida explained that he did not challenge the drug dog evidence during the motion to suppress because the dog made a positive alert on the vehicle and drugs were found in the truck.[66]  Accordingly, Maida believed that "it would not be beneficial to investigate or question his history of alerting to narcotics."[67]

Finally, Maida stated that he did not subpoena Jason Orzo because Orzo could not be located and because Richardson told Maida that it would be best not to locate Orzo because Orzo had witnessed Richardson making methamphetamine on several occasions.[68]

---

[64]Id. at 21.

[65]Id. at 63.  Oral consent, so long as it is voluntary, is sufficient.  See McCallum v. State, 608 S.W.2d 222, 225 (Tex. Crim. App. 1980) (holding that defendant's voluntary, oral permission to search vehicle was sufficient); Jackson v. State, 968 S.W.2d 495, 499 (Tex. App. -- Texarkana 1998, pet. ref'd) ("Consent need not be in writing . . . . [T]he police had a valid oral consent to search.").  Richardson does not assert that his consent was involuntarily given.

[66]Ex parte Richardson, No. WR-68,880-01, at 72.

[67]Id.

[68]Id. at 69.  This last complaint can immediately be dismissed as meritless.  See del Toro v. Quarterman, 498 F.3d 486, 491 (5th Cir. 2007) ("If . . . a client instructs his
(continued...)

Maida has offered a reasoned explanation in response to each of Richardson's criticisms of his handling of the motion to suppress. Maida made strategic decisions to assert only a few specific grounds in support of the motion to suppress. Even if, in retrospect, these decisions were open to question, that would not entitle Richardson to relief. See Strickland, 104 S. Ct. at 2065 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . ."); Crane v. Johnson, 178 F.3d 309, 314 (5th Cir. 1999) ("A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.") (quoting Garland v. Maggio, 717 F.2d 199, 206 (5th Cir. 1983)). Just because Maida's efforts ultimately proved unsuccessful does not mean his representation was objectively unreasonable. See Strickland, 104 S. Ct. at 2065.

Accordingly, based on the record and Maida's explanations, the court cannot conclude that the state habeas court unreasonably applied the deferential Strickland standard with regard to Maida's litigation of the motion to suppress. See Williams, 120 S. Ct. at 1523. Nor has Richardson identified any contrary decision by the

---

[68](...continued)
attorney not to . . . contact and interview [a] witness[], the client cannot later claim that the failure to do [so] amounted to ineffective assistance.").

Supreme Court on materially indistinguishable facts.   <u>See</u> <u>id.</u>
Thus, the court cannot grant relief on these grounds.

3.   <u>Failure to Interview Witnesses, Investigate, Prepare an
Adequate Defense, and Become Sufficiently Familiar with
the Pertinent Law and Facts</u>

Richardson alleges that Maida failed to interview prosecution
witnesses and witnesses suggested by Richardson, investigate the
offense, and prepare an adequate defense.[69]   Further, Richardson
contends that Maida did not have command of the relevant law or the
facts of the case.[70]   "It is beyond cavil that 'an attorney must
engage in a reasonable amount of pretrial investigation and[,] at
a minimum, interview potential witnesses and make an independent
investigation of the facts and circumstances in the case.'"
<u>Harrison v. Quarterman</u>, 496 F.3d 419, 425 (5th Cir. 2007) (quoting
<u>Bryant v. Scott</u>, 28 F.3d 1411, 1415 (5th Cir. 1994)).

In his responsive affidavit Maida stated that most of the
prosecution's witnesses were law enforcement officers, and that
when his private investigator contacted several of them, he was
directed to discuss the case with the district attorney's office.[71]
As for the non-law enforcement witnesses, Maida stated that Jason
Orzo could not be located and that he and Richardson agreed that it

---

[69]These claims include items 3.g and h as listed in Part II,
<u>supra</u>.

[70]This claim is listed in item 3.s in Part II, <u>supra</u>.

[71]<u>Ex parte Richardson</u>, No. WR-68,880-01, at 67.

-28-

would be best not to locate him since he had witnessed Richardson making methamphetamine on several occasions.[72]  Maida further stated that Tanya Nieves, the leaseholder of the residence where Richardson was living, refused to speak with him.[73]  Maida also stated that he hired a private investigator, who provided a detailed report, and that he spent considerably more time preparing for trial than the maximum amount of time for which he was compensated.[74]

Based on this explanation, the state habeas court concluded that "[t]rial counsel conducted sufficient pre-trial investigation in order to adequately prepare for trial,"[75] and thus that Richardson had failed to satisfy the first prong of the Strickland test.  See Strickland, 104 S. Ct. at 2064 (requiring that petitioner first show that counsel's performance was deficient).  The court does not believe this decision is contrary to or involves an unreasonable application of clearly established federal law.  See 28 U.S.C. § 2254(d)(1).

---

[72]Id. at 67, 69.  Any complaint regarding Maida's failure to interview Orzo is meritless.  See del Toro v. Quarterman, 498 F.3d 486, 491 (5th Cir. 2007) ("If . . . a client instructs his attorney not to  . . . contact and interview [a] witness[], the client cannot later claim that the failure to do [so] amounted to ineffective assistance.").

[73]Ex parte Richardson, No. WR-68,880-01, at 67.  A witness in a criminal case has the right to refuse to be interviewed. United States v. Fischel, 686 F.2d 1082, 1092 (5th Cir. 1982).

[74]Ex parte Richardson, No. WR-68,880-01, at 67-68.

[75]Id. at 77.

Moreover, Richardson has not presented any evidence showing what helpful or exculpatory evidence might have been discovered from these witnesses or what additional information Maida might have discovered had he expended more time and resources on investigation. Indeed, Richardson does not even disclose the names of the witnesses that he allegedly suggested to Maida. Nor does he point to any point of law that Maida failed to discover that would have been beneficial to Richardson. Richardson, therefore, has also failed to satisfy the second prong of the <u>Strickland</u> test. See <u>Strickland</u>, 104 S. Ct. at 2064 (requiring that petitioner also show that counsel's deficient performance prejudiced him); <u>Brown v. Dretke</u>, 419 F.3d 365, 375 (5th Cir. 2005) (holding that habeas petitioner had not satisfied second prong of <u>Strickland</u> test because he failed to present any evidence as to what information uninterviewed witnesses would have provided). See also <u>Moawad v. Anderson</u>, 143 F.3d 942, 948 (5th Cir. 1998) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.") (quoting <u>United States v. Green</u>, 882 F.2d 999, 1003 (5th Cir. 1989)).

4.    <u>Failure to Object or File Motion in Limine Related to Police Testimony Regarding Statements or Omissions Made by Richardson During a Custodial Interrogation Before Receiving His *Miranda* Warnings</u>

Richardson next complains that Maida failed to object to or file a motion in limine regarding police officer testimony of

statements or omissions allegedly made by Richardson[76] before he received Miranda warnings.[77] In order to determine whether Maida's failure to object to or file a motion in limine regarding these statements was unreasonable the court must evaluate applicable Texas and federal law to determine whether objecting or filing a motion in limine would have had any potential for success.

In Miranda v. Arizona, 86 S. Ct. 1602, 1612 (1966), the Court held that a criminal defendant must be given certain warnings before any custodial interrogation in order to adequately protect the defendant's Fifth Amendment privilege against self-incrimination.  If the warnings are not given, any statements made by the defendant during the custodial interrogation, whether inculpatory or exculpatory, are inadmissible at trial if introduced by the prosecution against the defendant.   Id.   A custodial interrogation is any "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."   Id.   A

---

[76]Richardson refers to these statements as "hearsay" statements.  See Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) at 9.  To the extent that the out-of-court statements were allegedly uttered by Richardson, the defendant, they did not constitute hearsay under the Texas Rules of Evidence.  See Tex. R. Evid. 801(e)(2)(A) (excluding from the definition of hearsay a statement made by a party that is offered against that party).  Therefore, any objection to testimony as to statements made by Richardson on hearsay grounds would have been overruled.

[77]These claims include items 3.l and p as listed in Part II, supra.

person is in "custody" if a reasonable person, in light of the circumstances, would objectively believe his freedom of movement was restrained to the degree associated with a formal arrest.  See Stansbury v. California, 114 S. Ct. 1526, 1529-30 (1994).  The "subjective views harbored by either the interrogating officer or the person being questioned" are not relevant.  Id. at 1529.

Texas has implemented Miranda by enacting a statute that specifically states the warnings that must be given to a defendant before a custodial interrogation in order for any statements made by the defendant during the interrogation to be admissible against him.  See Tex. Code Crim. Proc. art. 38.22 (Vernon 2005).  Texas has adopted the Miranda definition of custodial interrogation. See, e.g., Martinez v. State, 171 S.W.3d 422, 429 (Tex. App. -- Houston [1st Dist.] 2005, no pet.) (reciting verbatim the Miranda definition of custodial interrogation).  Moreover, Texas courts have identified four situations that are likely to constitute custody:

> (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

Dowthitt v. State, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996).

Although Richardson does not specify the statements or omissions to which he believes Maida should have objected on

-32-

<u>Miranda</u> grounds, the court has reviewed the record and identified all testimony regarding statements allegedly made by Richardson before he was given his <u>Miranda</u> warnings to which Maida failed to object on <u>Miranda</u> grounds.[78]

### a.   Pre-custody Statements

Officer McNaul testified during both the suppression hearing and the state's case-in-chief to several statements made by Richardson soon after he arrived on the scene.  He testified that Richardson approached him and asked to speak with Orzo.[79]  Then, McNaul testified that he asked Richardson whether he lived in the residence in question, and Richardson stated that he did.[80]  McNaul further testified that he then asked Richardson about the alleged assault of Orzo, and that Richardson admitted there had been an altercation.[81]  In response to McNaul's inquiry as to whether Richardson owned the truck that Orzo had identified, McNaul testified that Richardson said that he was not the owner, but that he was only using it to move.[82]  Finally, McNaul testified that he asked Richardson whether he had a methamphetamine lab inside the

---

[78]Richardson was given the <u>Miranda</u> warnings by Officer McNaul after Officer McNaul returned with the search warrant but before the officers began searching the residence.  3 R.R. at 32.

[79]3 R.R. at 16, 34.

[80]<u>Id.</u> at 16, 34-35.

[81]<u>Id.</u> at 16-17.

[82]<u>Id.</u> at 34-35.

residence and whether he had any drugs in the truck, and that Richardson told him that he did not.[83]

Under controlling Texas precedent, Richardson would not be considered as being in custody when these statements were made. See Allen v. State, 536 S.W.2d 364, 370 (Tex. Crim. App. 1976) (explaining that inquiries made of a defendant by law enforcement personnel during on-the-scene investigation shortly after law enforcement personnel arrive does not constitute custodial interrogation). McNaul had not placed any restrictions on Richardson's movements that "amount[ed] to the degree associated with an arrest as opposed to an investigative detention." Dowthitt, 931 S.W.2d at 255. Therefore, the first three situations that Texas courts usually consider to constitute custody did not apply. See id. Moreover, the fourth situation was also inapplicable because, even if McNaul already had probable cause for an arrest at that point, McNaul did not manifest that fact to Richardson by simply asking him some preliminary investigatory questions. See id. ("Concerning the fourth situation, Stansbury [v. California, 114 S. Ct. 1526 (1994),] dictates that the officers' knowledge of probable cause be manifested to the suspect."). Therefore, in light of the controlling law and the circumstances, it was not unreasonable for Maida to fail to object to testimony regarding these statements on Miranda grounds.

---

[83]Id. at 35.

b.   Statement Granting Permission to Search the Truck

During both the suppression hearing and the presentation of the state's case-in-chief Officer McNaul testified that while he was in the process of obtaining the search warrant he received a phone call from Officer Lopez.  During the phone call Lopez told him that Richardson had given him verbal consent to search the truck.[84]  Also, during the state's case-in-chief, Lopez himself testified that McNaul gave him permission to search the truck.[85]

The court will assume _arguendo_ that this statement by Richardson giving permission to search the truck was made while Richardson was in custody, and that it was made in response to

---

[84]3 R.R. at 22, 37.  This statement was hearsay because it was an out-of-court statement made by Officer Lopez introduced to prove the truth of the matter asserted, i.e., that Richardson had given consent.  See Tex. R. Evid. 801(d).  Maida did not object to this statement on hearsay grounds during the suppression hearing, but did object on hearsay grounds during the state's case-in-chief.  3 R.R. at 22, 37.  The trial court, however, overruled Maida's objection.  Id. at 37.

[85]3 R.R. at 63.  Officer Lopez testified, "I told [Officer McNaul] that the defendant had given verbal permission to look in his truck . . . ."  Id.  This testimony was hearsay because it relayed an out-of-court statement made by Lopez, see Tex. R. Evid. 801(d), and Maida did not object.  Even assuming Maida's failure to object was unreasonable, however, Richardson was not prejudiced as a result.  Had Maida objected on hearsay grounds, Lopez could have easily reformulated his testimony to state that Richardson had given verbal permission to search the truck, without saying that he relayed this to Officer McNaul.  See Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) ("To satisfy the prejudice prong of Strickland, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") (internal quotation omitted).

questioning on the part of Officer Lopez.  Nevertheless, the statement was not inadmissible under Miranda.  As both Texas and federal courts have held, asking a defendant for consent to search does not constitute interrogation within the meaning of Miranda. See, e.g., United States v. Stevens, 487 F.3d 232, 242 (5th Cir. 2007) ("A statement granting 'consent to search is neither testimonial nor communicative in the Fifth Amendment sense.'") (quoting Wayne R. LaFave, Jerold H. Israel, & Nancy J. King, Criminal Procedure § 3.10 (4th ed. 2004)); United States v. McClellan, 165 F.3d 535, 544 (7th Cir. 1999) ("[A] request for consent to search is not an interrogation within the meaning of Miranda because the giving of such consent is not a self-incriminating statement.") (internal quotations omitted); United States v. McCurdy, 40 F.3d 1111, 1118 (10th Cir. 1994) ("An officer's request to search a defendant's automobile does not constitute interrogation invoking a defendant's Miranda rights."); Jones v. State, 7 S.W.3d 172, 175 (Tex. App. -- Houston [1st Dist.] 1999, pet. ref'd) ("[A]sking [a defendant] for consent to search does not constitute []interrogation under Miranda.").  Therefore, "[t]he failure of officials to give Miranda warnings before asking for consent does not prohibit the use of a defendant's in-custody statements granting consent to a search." Stevens, 487 F.3d at 242.  Accordingly, Maida's failure to object to these statements on Miranda grounds was not unreasonable.

c.    Statement Related to the Apartment Key

While being cross-examined by Maida during the state's case-in-chief, Officer McNaul testified that when the police officers took Richardson into custody, they took his keys from him.[86] McNaul further testified that he retained the key to Richardson's residence.[87]   McNaul stated that he knew the key that he had retained was the key to the residence because "[Richardson] said that was the key to the apartment."[88]   Maida did not object.[89]   But even assuming that an objection to this statement on Miranda grounds would have been sustained and that Maida's failure to make the objection was unreasonable, Richardson was not prejudiced.  The prosecution had already adequately established the link between Richardson and the residence key by having McNaul testify that he obtained the key from Richardson and that the key opened the apartment.[90]  The court cannot conclude, therefore, that there is a reasonable probability an objection by Maida to the introduction of Richardson's statement regarding the key would have changed the outcome of the trial.  See Strickland, 104 S. Ct. at 2068.

In light of the foregoing analysis, the state habeas court did not reach a decision contrary to or involving an unreasonable

_____

[86] 3 R.R. at 53.

[87] Id.

[88] Id.

[89] See id.

[90] See id. at 40.

-37-

application of clearly established federal law.  See 28 U.S.C. § 2254(d)(1).  The court cannot grant relief on this ground.

    5.    Failure to Request Lesser Included Offense Instruction

    Richardson next asserts that Maida unreasonably failed to request a jury instruction for a lesser included offense, which would have allowed the jury to convict Richardson of possessing a smaller amount of methamphetamine.[91]  In his affidavit submitted in the state habeas proceeding, Maida stated that he discussed the possibility of requesting a lesser included offense with Richardson, but that Richardson told Maida that he would rather "go for broke."[92]  According to Maida, Richardson hoped that the jury would conclude that there was a reasonable doubt as to whether Richardson possessed 400 grams of methamphetamine and acquit him of the charged offense rather than convict him of a lesser offense.[93]

    Adopting such an "all or nothing" trial strategy may be reasonable in some circumstances.  See, e.g., Cordero v. Quarterman, No. 2:05-CV-0140, 2008 WL 3874595 (N.D. Tex. 2008) ("Trial counsel acted in an objectively reasonable manner in electing not to request [a lesser included offense] instruction . . . .").  Moreover, in this case Richardson specifically requested that Maida not request a lesser included offense

────────────────────

[91]This claim is listed as item 3.o in Part II, supra.

[92]Ex parte Richardson, No. WR-68,880-01, at 70-71.

[93]Id.

instruction.  A defendant cannot request that his attorney follow a particular trial strategy, then later complain that the requested strategy constituted ineffective assistance.  Cf. del Toro v. Quarterman, 498 F.3d 486, 491 (5th Cir. 2007) ("If . . . a client instructs his attorney not to  . . . contact and interview [a] witness[], the client cannot later claim that the failure to do [so] amounted to ineffective assistance.").  Accordingly, the state habeas court did not unreasonably apply well established federal law in denying this claim, and this court cannot grant relief on it.

6.   Failure to Spend Adequate Time Meeting with Richardson

Richardson next argues that Maida's representation was inadequate because Maida did not spend sufficient time meeting with him.[94]  Richardson alleges that Maida met with him for only brief periods of time before court each day of the trial.  He contends that because Maida failed to spend enough time conferring with him, Richardson was not able to participate and in his defense and Maida was not adequately prepared to cross-examine the lab technician who testified for the state to establish the quantity of methamphetamine that Richardson possessed.

The state habeas court found that Maida "met with [Richardson] on several occasions . . . ."[95]  More specifically, Maida averred,

---

[94]This claim is listed as item 3.q in Part II, supra.

[95]Ex parte Richardson, No. WR-68,880-01, at 77.

-39-

and the state habeas court accepted as true,[96] that Maida's investigator met with Richardson in jail, that Maida himself met with Richardson once in jail, and that Maida met with Richardson on eight other occasions at court.[97]

These factual findings, however, are not dispositive; whether the amount of time that Maida spent with Richardson was so insufficient as to be objectively unreasonable is a qualitative analysis rather than a quantitative one. See Easter v. Estelle, 609 F.2d 756, 759 (5th Cir. 1980) ("[B]revity of time spent in consultation, without more, does not establish that counsel was ineffective.") (citing Carbo v. United States, 581 F.2d 91 (5th Cir. 1978)). The pivotal question is whether Maida spent enough time preparing for trial such that he was sufficiently familiar with the facts and law of the case. See id. According to the state habeas court, Maida's preparation was satisfactory.

The state habeas court found that Maida "conducted sufficient pre-trial investigation in order to adequately prepare for trial,"[98] and that Maida "learned from [Richardson] the methodology and science of manufacturing methamphetamine."[99] Further, Maida stated,

_____

[96]See id. at 77 (finding that "the facts asserted in the affidavit of SAM A. MAIDA filed in this cause are true . . . .").

[97]Id. at 71.

[98]Id. at 77.

[99]Id.

-40-

and the state habeas court accepted as true,[100] that Maida discussed the case with Richardson "in great detail," and that he "spent many hours researching in order to obtain information to assist me in cross examining the Department of Public Safety chemist in court."[101]   Moreover, the record reflects that Maida thoroughly cross-examined the state's lab technician witness, asking questions intended to scrutinize the chain of custody of the samples that she tested, to determine whether the samples could have changed in chemical composition between the time they were seized and the time when they were analyzed, and to impugn the witness's earlier testimony that the solvent in which the methamphetamine was dissolved qualified as an "adulterant or diluent" under the relevant criminal statute.[102]   Accordingly, the court concludes that the state habeas court's denial of relief on this ground was not contrary to nor did it involve an unreasonable application of well established federal law.   See 28 U.S.C. § 2254(d)(1).   Relief on this claim must be denied.

7.   Refusal to Withdraw as Richardson's Counsel

Richardson lastly asserts that Maida wrongly refused to withdraw as trial counsel.[103]   Richardson argues that Maida acted

---

[100]See id. (finding that "the facts asserted in the affidavit of SAM A. MAIDA filed in this cause are true . . . .").

[101]Id. at 71.

[102]See 4 R.R. at 39-59, 60-62.

[103]This claim is listed as item 3.u in Part II, supra.

unreasonably by continuing to serve as trial counsel because he had an inadequate understanding of chemistry and the process of making methamphetamine.[104]

Although Richardson's state habeas petition included this claim, the state habeas court did not explicitly address it. Nevertheless, by denying all relief, the state habeas court implicitly concluded either that Maida acted reasonably by failing to move to withdraw or that Richardson was not prejudiced by Maida's failure to move to withdraw. See Strickland, 104 S. Ct. at 2064 (describing the two-prong test for ineffective assistance of counsel).

The state habeas court did, however, make several relevant findings of fact, which, as previously explained, Richardson has presented no evidence to challenge. First, the state habeas court concluded that Maida "learned from [Richardson] the methodology and science of manufacturing methamphetamine."[105]   Second, the state habeas court found to be true[106] Maida's averments that he had spent

_____

[104]The court notes that Richardson himself could have requested the appointment of new trial counsel without having to wait for counsel to move to withdraw. See Garner v. State, 864 S.W.2d 92, 98 (Tex. App. -- Houston [1st Dist.] 1993, pet. ref'd) ("There are certain circumstances in which an accused may, upon a proper showing, be entitled to a change of counsel. . . . [T]he accused must bring the matter to the trial court's attention, and must successfully bear the burden of proving that he is entitled to a change of counsel.") (citations omitted).  The record does not indicate, however, that Richardson made such a request.

[105]Ex parte Richardson, No. WR-68,880-01, at 77.

[106]See id. at 77 (finding that "the facts asserted in the affidavit of SAM A. MAIDA filed in this cause are true . . . .").

many hours researching methamphetamine production and that he had a sufficient background in chemistry based on his completion of undergraduate courses in chemistry and organic chemistry, as well as one year of pharmacy school.[107]   In light of these unchallenged findings of fact, Maida did not act unreasonably by failing to move to withdraw.

Furthermore, even if Maida, when considering his skill and knowledge, acted unreasonably by failing to move to withdraw, Richardson was not prejudiced by that decision.  As this court has already pointed out, Richardson thoroughly cross-examined the state's lab technician witness regarding the chemical composition of the seized substances that contained methamphetamine.  His knowledge of chemistry and methamphetamine production was sufficient.  In conclusion, the state habeas court reasonably determined that "[t]he totality of the representation afforded [Richardson] was sufficient to protect his right to reasonably effective assistance of counsel."[108]

### V.  Certificate of Appealability

Although Richardson has not yet requested a Certificate of Appealability ("COA"), the court may deny a COA sua sponte. Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (per

---

[107]Id. at 72.

[108]Id. at 79.

curiam).   To obtain a COA for claims denied on the merits, Richardson must make a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); <u>Tennard v. Dretke</u>, 124 S. Ct. 2562, 2569 (2004).   To make such a showing Richardson must demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the issues presented are adequate to deserve encouragement to proceed further.   <u>Tennard</u>, 124 S. Ct. at 2569. For the reasons stated in this Memorandum Opinion and Order, Richardson has not made a substantial showing of the denial of a constitutional right.   Accordingly, a certificate of appealability will be denied in the final judgment.

### VI.   <u>Conclusion and Order</u>

The court **ORDERS** the following:

1.   Richardson's Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) is **DENIED**.

2.   Quarterman's Motion for Summary Judgment (Docket Entry No. 20) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 20th day of November, 2008.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-44-